**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**ASHLAND**

**Civil Action No. 19-126-HRW**

**MARY HARRIS,**                                                                **PLAINTIFF,**

**v.**                                **MEMORANMDUM OPINION AND ORDER**

**LOWE'S HOME CENTERS, LLC,**                                        **DEFENFDANT.**

      This matter is before the Court upon Defendant Lowe's Home Center, LLC's Motion to Exclude Testimony of Plaintiff's Experts [Docket No. 49] and Motion for Summary Judgment [Docket No. 55]. The motions have been fully briefed by the parties. For the reasons set forth herein, the Court finds that the expert testimony offered by Plaintiff does not satisfy the requirements of Fed.R.Evid. 702. The Court further finds that without competent expert testimony, Plaintiff cannot maintain her claim of negligence against Defendant. Therefore, Defendant is entitled to judgment as a matter of law.

**I.**

      This case arises from an incident at the Lowe's Home Center in Morehead, Kentucky on July 17, 2018. On that day, Plaintiff Mary Harris alleges that she "slipped on water and/or a liquid substance on the ground in the Lowe's store causing her to fall." [Complaint, Docket 1-1, ¶ 7]. Ms. Harris claims that as a result of the fall, she suffered injuries to her left knee and left foot. *Id.* at ¶ 8. She filed this lawsuit against Lowe's alleging negligence and seeking damages.

1

The case was originally filed in in Rowan Circuit Court and subsequently removed to this Court, by Defendant pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Discovery followed.

Pursuant to Fed. Rule. Civ. Proc. 26, Plaintiff filed a disclosure of expert witnesses, identifying Drs. Adam Metzler, Jonathon Spanyer, and Ryan Finnan, orthopedic surgeons at OrthoCincy Orthopedics & Sports Medicine, in Cincinnati, Ohio, as experts who would provide causation opinions at trial. [Docket No. 16]. She also identified Dr. Charles Crouse, an orthopedic surgeon at St. Claire Medical Center in Morehead, Kentucky. *Id.* Defendant deposed all four physicians. Lowe's seeks to exclude their testimony, arguing that their opinions fall short of the standards of Rule 702, *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and its progeny. Lowe's also seeks summary judgment.

**II.**

It is undisputed that Ms. Harris suffered from problems with her left knee and left ankle prior to falling at Lowe's in July of 2018. Prior to that fall, Plaintiff had been treated by Dr. Crouse for issues in her left knee. As part of this treatment, she had an MRI of her knee on June 12, 2018, approximately a month before the incident at Lowe's. [Records of St. Claire Regional Medical Center, Docket No. 57-1, p. 1-2]. Based upon the MRI, Dr. Crouse diagnosed a complex tear of the medial meniscus of Ms. Harris' left knee. *Id.* He scheduled a knee arthroscopy for July 24, 2018.

Seven days before the surgery, Plaintiff fell at Lowe's. She told Dr. Crouse that the fall at Lowe's had caused an increase in her knee pain. *Id.* at p. 24. Dr. Crouse performed the previously scheduled arthroscopy on July 24, 2018.

Ms. Harris maintains that her treatment with Dr. Crouse did not provide relief for her knee pain which she claims continued to worsen after the fall at Lowe's. A few months after the scope procedure she sought treatment with orthopedic specialists at OrthoCincy.

On October 26, 2018 she was evaluated by Dr. Adam Metzler, a specialist in sports medicine as well as knee and shoulder injuries. [Deposition of Adam Metzler, M.D., Docket No. 49-3, p. 8]. Dr. Metzler scheduled her for an MRI which was performed on November 28, 2018. After reviewing the MRI images, he recommended a referral to Dr. Spanyer, a specialist in hip and knee replacement surgery, for a possible unicompartmental medial knee replacement. [Records of Ortho Cincy, Docket No. 57-2, p. 8].

On December 11, 2018, Ms. Harris was seen by Dr. Jonathon Spanyer who concluded that she would be "a good candidate for partial knee replacement on the medial side." *Id.*

Plaintiff followed-up with Dr. Spanyer on January 8, 2019 after an ankle MRI. *Id.* at p. 12-13. He found that it showed a "3 mm osteochondral injury in [her] talar dome, as well as what appears to be a left ankle peroneus brevis tendon tear." *Id.* He referred her to Dr. Ryan Finnan, a specialist in orthopedic foot trauma and foot and ankle surgery for evaluation of the left ankle injury. *Id.*

Dr. Finnan examined Plaintiff on February 13, 2019 and ordered another MRI. After reviewing the MRI, he diagnosed her as having a left peroneus brevis tear as well as a left medial talar osteochondral defect, asymptomatic. *Id*. at p. 16. As Plaintiff was already set to have partial knee replacement with Dr. Spanyer soon after this visit, Dr. Finnan "counseled [her] to rehab that" and if she continued to have issues with her ankle, his plan "would be for a peroneal tendon repair and tenolysis." *Id.*

Dr. Spanyer successfully performed the partial knee replacement on Plaintiff's left knee on February 15, 2019 at St. Elizabeth Healthcare in Fort Mitchell, KY. *Id.* at p. 17-19.  After continued rehabilitation of the partial knee replacement, Plaintiff underwent ankle surgery to repair the left peroneus brevis tear and tendinopathy on September 6, 2019, again at St. Elizabeth Healthcare. *Id.* at p. 31-33.

### III.

Plaintiff identified Drs. Metzler, Spanyer, Finnan and Crouse as expert witnesses pursuant to Fed.R.Civ.Proc. 26(a)(2). During discovery, counsel for Lowe's deposed all four physicians.  Lowe's seeks to exclude their testimony, arguing that it des not satisfy the requirements of Fed.R.Evid. 702.

Rule 702 of the Federal Rule of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to ... determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

District courts have a "gatekeeping role" in screening the use of expert testimony, and trial judges have discretion to determine whether such testimony is admissible, based on whether it is both relevant and reliable. *Daubert*, 509 U.S. at 589-597; *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999); *Newell Rubbermaid, Inc. v. The Raymond Corp.,* 676 F.3d 521, 527 (6th Cir.2012).

Courts have "broad latitude" in making this determination. *Kumho,* 526 U.S. at 138. The inquiry is "a flexible one," and "[t]he focus ... must be solely on principles and methodology, not

on the conclusions they generate." *Daubert,* 509 U.S. at 594–95. Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid," whereas relevance depends upon "whether [that]reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–593.

"[T]he gatekeeping inquiry must be tied to the facts of a particular case, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho,* 526 U.S. at 150.

## IV.

### A.  Dr. Metzler

With respect to Plaintiff's diagnoses, Dr. Metzler testified that there are "multiple potential causes for those conditions." [Docket No. 49-3, p. 41]. He opined that "osteoarthritis is a progressive non-curable degenerative disease process, caused by multiple things, including but not limited to…age, weight, sports, trauma, work conditions." *Id.* at 41. Further, Dr. Metzler testified that "[a]ll those things can factor into the development of osteoarthritis," and "[p]revious meniscal tears, previous surgeries before can all cause progression." *Id.* He explained that all orthopedic surgeons "know that a previous meniscectomy can lead to early osteoarthritis, as well established in the science literature." *Id.* at 41.

Dr. Metzler testified that, based on his limited interaction with Ms. Harris, he did not have an opinion as to the cause of Plaintiff's injuries. *Id.* at 42.

In fact, Dr. Metzler was never asked to provide a causation opinion. *Id.* at p. 40.

It is unclear why Dr. Metzler, identified by Plaintiff as an expert who would render an opinion as to causation, was not asked to testify specifically in that regard.  Nonetheless, he clearly

testified that does not have an opinion as to causation.  As such, his opinion does not qualify as expert testimony under Rule 702.

   **B. Dr. Spanyer**

   Plaintiff first saw Dr. Spanyer on December 11, 2018, approximately 5 months after the incident at Lowe's. [Deposition of Jonathon Spanyer, M.D., Docket No. 49-4, p. 18]. At that time, he was aware that Plaintiff had surgery on her left knee in July of 2018 but did not know what Dr. Crouse did to her left knee during that surgery. *Id.* at 21-22.  It was not until his deposition, during which he reviewed the July 24, 2018 surgical note that he learned, for the first time, that Dr. Crouse, corrected issues on both the lateral and medial side of Plaintiff's left knee. *Id.* at 22.

   Dr. Spanyer testified that Plaintiff told him about a May 2018 trip and fall in her backyard as well the July 2018 incident at Lowe's. *Id.* at 19. Dr. Spanyer did not recall Plaintiff telling him about any other falls or prior knee issues. *Id.* at 19-20. Notably, Plaintiff did **not** disclose to Dr. Spanyer that she had significant medial knee pain **before** the July 2018 incident at Lowe's. *Id.* at 20-21. Dr. Spanyer testified as follows:

> Q: So, [Plaintiff] came to you on December 11, 2018 for the first time. She told you that she did not have any medial knee pain prior to her fall at Lowe's and asked you to basically give her a causation [opinion] as part of your treatment of her; is that fair?
>
> A: I think that's – a fair statement. Yes.

   *Id.* at 23.

   Although Dr. Spanyer opined that Plaintiff's arthritis had been progressive since her fall at Lowe's, his testimony was admittedly based upon Plaintiff's subjective comments to him regarding when her medial pain started, to-wit, that she had **no** medial pain before the incident at Lowe's. *Id.* at 25.  Thus, it appears that his opinion is based upon false information.

Indeed, when Dr. Spanyer was shown the medical records and imaging pertaining to Plaintiff's pre-existing injuries on the lateral side of her left knee, he concluded that those injuries were **not** related to the incident at Lowe's. *Id.* at 47-48.  He testified:

> With regard to the left knee she tells me that there are plans for litigation. She's considering requesting possible future medical coverage for the left knee based on her pending lawsuit with Lowe's. She tells me, as well that with regard to the left knee she is worrie[d] that she may have more symptoms and she's not particularly interested in closing out the case if there are going to be on-going problems or if she has to have any type of further intervention.
> Again, it seems today that the majority of her symptoms are along the lateral side. **She does have a known history of lateral meniscus tear**. She was being treated for this with an outside surgeon prior to presenting. She also underwent arthroscopic intervention, which showed evidence of a lateral meniscus tear which was debrided again suggesting that she had the lateral pathology at her baseline.
> ….
> **With regard to the knee it is my impression and my professional medical opinion that within a reasonable degree of medical certainty, meaning more likely than not, that the injury that she sustained as part of a litigation with Lowe's was appropriately and adequately treated with partial knee arthroplasty on the medial side. In addition, she did have underlying preexisting lateral compartment lateral meniscus tearing for which she underwent arthroscopic debridement.**
> ….
> It is my medical professional opinion within a reasonable degree of medical certainty, meaning more likely than not, **that lateral compartment progressive arthritic change would in fact be related to previous lateral meniscal debridement which was an underlying preexisting condition**.

*Id*. at p. 47-49 (emphasis added).

Dr. Spanyer's initial expert opinion was based on false information. His subsequent opinion actually works **against** Plaintiff.  Clearly, his testimony is neither reliable nor potentially helpful to a jury. As such, it is inadmissible under Rule 702.

### C.  Dr. Fannin

Dr. Finnan diagnosed Plaintiff with a peroneus brevis tear of her left ankle, which he described as a "commonly torn tendon, sometimes degenerative, sometimes traumatic in nature." [Deposition of Ryan Fannin, M.D., Docket No. 49-5, p. 21].

He testified that Plaintiff never asked him to give  a causation opinion regarding her ankle injury. *Id.* at 29.  When asked if he had an opinion as to whether the peroneus brevis tear was caused by the incident at Lowe's, he suggested that it was possible:

> I cannot tell you if this is a degenerative tear that was atraumatic or if it occurred at the time of the injury. She told me she had had an injury and had pain following that. So presumably, reasonable to think that the injury caused this tendon injury.

*Id.* at 22.

This testimony was not couched in the requisite parlance of an expert - "within a reasonable degree of medical certainty."  In fact, Dr. Finnan admitted that his testimony was based solely upon timing of the injury  in relation to the incident and plaintiff's subjective statements regarding her pain. *Id.* at 22.  Clearly, speculation based upon temporal factors and Ms. Harris' own description of her symptoms are not the type of "facts or data" or "reliable principles and methods" contemplated by Rule 702.  Moreover, "no matter how good an expert's credentials may be, they are not permitted to speculate." *Tamraz v. Lincoln Electric Company*, 620 F.3d 665, 671 (6th Cir. 2010) (internal citations omitted).

Dr. Finnan's testimony is not admissible as expert testimony.

### D.  Dr. Crouse

As set forth *supra*, Dr. Crouse treated Plaintiff for knee issues prior to the incident at Lowe's.  The timing is noteworthy.  He ordered an MRI of her left knee on June 12, 2018 and,

based upon that imaging and his diagnosis, scheduled her for knee surgery on July 24, 2018. One week before the scheduled surgery, on July 17, 2018, Ms. Harris fell at Lowe's.  He testified that following the procedure he performed on July 24, during which he removed and smoothed portions of cartilage, there was nothing noticeably different in her knee than seen on the June 12 MRI. [Deposition of Charles Crouse, M.D., Docket No. 49-2, p. 52].  It is unclear how this testimony will aid the trier of fact in assessing causation in the context of Lowe's alleged negligence.

## V.

*Daubert* charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The "gatekeeper" doctrine was designed to protect juries from unreliable, irrelevant, and illegitimate testimony.  The Court is mindful that our adversary system of justice presumes that the jury is capable of understanding the evidence; understanding and heeding the judge's instructions; and then separating the evidentiary wheat from the chaff: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.,* 596.

However, the expert testimony offered by Plaintiff is not hovering about the fine line between "shaky" and "admissible."  Far from it.  To the extent that any of these physicians offered opinions as to causation, their testimony is unreliable and/or based upon false information and would not aid a jury in assessing Lowe's negligence. In fact, this jumble of vague and inconsistent opinions would certainly add a fair amount of confusion to the presentation of facts - precisely the type of flimsy  testimony that Rule 702 was designed to prevent.

## VI.

Plaintiff's only claim against Lowe's is that of negligence.  To prevail on a negligence claim, a plaintiff must establish: (1) a duty of care that the tortfeasor owed the plaintiff, (2) the tortfeasor's breach of that duty, (3) a causal connection between the breach and the plaintiff's injuries, and (4) actual injury to the plaintiff. *See Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003).  Defendant argues that she cannot establish the third element – causation. The Court agrees.

Given the complexity of her pre-existing knee and ankle issues, expert testimony is required as to causation.  In other words, causation, in this case, cannot be "inferred from common knowledge" as it is no " 'so apparent that laymen with general knowledge will have no difficulty recognizing it.' '*Roark v. Speedway, LLC* 2015 WL 12978822 (E.D. Ky. 2015) *citing  Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965).  In *Roark*, Judge Thapar illustrated the type of causation which does not require expert testimony:

> In *Tatham v. Palmer*, for example, the plaintiff hit his head on the windshield during a car accident, sustaining cuts on his forehead and chin. After the accident, he suffered from "incessant headaches" and nervousness, neither of which was present before the accident. The undisputed evidence of a head injury, combined with the plaintiffs lack of headaches before the accident, was enough to take the causation question to the jury because "it is within the realm of common knowledge that a severe blow to the head will cause headaches."

Id. at *2 (internal citations omitted).

*Roark* is particularly elucidative as it highlights the difference between the type of causation analysis which requires expert testimony and the type that does not. The Plaintiff in *Roark* suffered a burn and pain in his left hand, after flipping a light switch at a Speedway restroom, receiving a shock, and falling into a pool of liquid on the restroom floor. *Id.* at *1.  Roark sued

Speedway for negligence.  In considering Speedway's motion for summary judgment based upon Plaintiff's lack of expert testimony, Judge Thapar noted "[n]othing in the record suggests that Roark previously suffered a burn on his left wrist." *Id.* at *2. He concluded that "[t]he causal relationship between an electrical shock and a burn is certainly within the realm of common knowledge. *Id.*  Judge Thapar concluded, accordingly, that Roark did not have to present expert medical testimony to establish the causal link between the shock and his burn. *Id.*

But Roark's story was not over. He also claimed that he suffered from seizures, and problems with his head, neck, shoulder, back and legs, which he attributed to the fall. *Id.* Judge Thapar found that, unlike the burn to wrist, expert testimony was required to establish a causal connection between these aliments and Roark's fall at Speedway.  He noted "Roark's Speedway fall is the latest in a long history of unfortunate incidents" including ATV accidents, a collision with a mail truck, falling rafters and scaffolding and an incident during which a horse pushed him against a barn. *Id.*  Given Roark's lengthy history of injuries involving his head, neck, shoulder, back and legs, expert testimony to establish the causation element of his claim against Speedway. *Id.* Without such testimony, Roark could not maintain his claim against Speedway for these alleged injuries. *Id.*

Like Roark, Ms. Harris' history of knee and ankle issues require expert testimony to determine what, if any, of her ongoing injuries were caused or aggravated by the fall at Lowe's. Yet, as set forth *supra*, she has not presented competent, admissible expert testimony. As such, she cannot complete the negligence equation. Ms. Harris' failure to make a showing that is "sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986).

11

## VII.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Lowe's Home Center, LLC's Motion to Exclude Testimony of Plaintiff's Experts [Docket No. 49] be **SUSTAINED** and Defendant Lowe's Home Center, LLC's Motion for Summary Judgment [Docket No. 55] be **SUSTAINED.**

This 7th day of April 2021.



**Signed By:**

**_Henry R Wilhoit Jr._**

**United States District Judge**

12